D3mdrees
                          Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4            v.                            08 Cr. 0717 (JGK)

5   DAVID COPELAND REED,

6                Defendant.

7   ------------------------------x

8
                                          March 22, 2013
9                                         2:45 p.m.

10
    Before:
11
                      HON. JOHN G. KOELTL,
12
                                          District Judge
13

14                          APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BY:  ROSEMARY NIDIRY
17       Assistant United States Attorney

18  FEDERAL DEFENDERS OF NEW YORK, INC.
         Attorneys for Defendant
19  BY:  SABRINA SHROFF

20

21

22

23

24

25

D3mdrees
                            Sentence

1              THE CLERK:  United States of America versus David

2   Copeland Reed.

3              Will all parties please state who they are for the

4   record.

5              MS. NIDIRY:  Good afternoon, your Honor.  Rosemary

6   Nidiry for the government.

7              MS. SHROFF:  Good afternoon, your Honor.  Federal

8   Defenders of New York by Sabrina Shroff on behalf of Mr. Reed.

9              Your Honor, with the Court's permission, I have

10  switched seats because my client cannot hear at all from his

11  left ear and he has some hearing on this side so I sat to his

12  right.

13             THE COURT:  Oh, sure.  No problem.

14             And the defendant can remain seated if the defendant

15  wishes, that's fine.

16             MS. SHROFF:  Thank you, your Honor.

17             THE COURT:  OK.

18             All right.  The defendant is present.

19             I've received the presentence report, prepared

20  June 13, 2012, revised November 30, 2012, together with the

21  sentencing recommendation and the addendum, dated November 30,

22  2012.

23             Yes?

24             MS. SHROFF:  I'm sorry, your Honor.  Mr. Reed is

25  unable to hear the Court.  I was wondering if -- he just can't

D3mdrees
Sentence

1    hear you.  Mr. Reed cannot hear you.  I'm sorry.

2            THE COURT:  That's all right.  I'll -- is that because

3    I'm not talking loud enough?

4            MS. SHROFF:  Yes, your Honor.

5            THE COURT:  Oh, all right.  I'll begin again.

6            MS. SHROFF:  Thank you.

7            THE COURT:  If Mr. Reed can't hear me, just raise your

8    hand, Mr. Reed.  All right?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  OK.

11           I've received the presentence report, prepared

12   June 13, 2012, revised November 30, 2012, together with the

13   sentencing recommendation and the addendum dated November 30,

14   2012.

15           I've received the defense submission dated March 8,

16   2013.  I've received the government's submission dated

17   March 14, 2013.  I've received victim letters submitted by the

18   government on February 2, 2012 and August 23, 2012, and victim

19   letters that were attached to Court orders dated June 5, 2012

20   and August 27, 2012.

21           Is there a request for forfeiture?

22           MS. NIDIRY:  Yes, your Honor.  There is an agreement

23   that was in the plea agreement.

24           THE COURT:  Keep your voice up.

25           MS. NIDIRY:  In the plea agreement, there was an

SOUTHERN DISTRICT REPORTERS, P.C.<br>(212) 805-0300

D3mdrees
Sentence

1   agreement to a forfeiture amount of $12 million, and there was

2   a consent order signed by the defendant at the time of the

3   plea.

4          THE COURT:  Do you have a proposed order of

5   forfeiture -- it was 12.8 million, wasn't it?

6          MS. NIDIRY:  Actually, I think it was -- I will get a

7   copy.

8          (Pause)

9          Yes, your Honor.  I have an order that was attached to

10  the plea agreement for 12.8 million.

11         THE COURT:  All right.  Show it to the defense,

12  please.

13         (Pause)

14         MS. SHROFF:  Thank you, Ms. Nidiry.

15         MS. NIDIRY:  (Handing to the Court)

16         (Pause)

17         THE COURT:  OK.  The defense agrees that I can sign

18  the order of forfeiture in connection with the sentence?

19         MS. SHROFF:  Yes, your Honor.

20         THE COURT:  All right.  With respect to restitution,

21  the government submitted a revised victim list together with

22  its memorandum.  The total amount of restitution in the revised

23  list of victims is $4,326,373.78, and there are over 200

24  victims.

25         Does the defendant agree with that amount and those

D3mdrees
                              Sentence

1    victims?

2             MS. SHROFF:  For purposes of restitution, we do, your

3    Honor.

4             THE COURT:  OK.  All right.  You say "for purposes of

5    restitution."  Are you drawing a distinction between some other

6    purpose?  Based on the agreement of the defense, I would

7    include an order of restitution in the judgment and attach to

8    the judgment the exhibit to the government's memo which

9    indicates the victims, the amounts, and the total of

10   $4,326,373.78.  Right?

11            MS. SHROFF:  Yes, your Honor.

12            THE COURT:  OK.  I will deal with the other issue of

13   the guideline calculations and the 50 victims or more shortly,

14   but there is agreement with respect to the amount of

15   restitution and the victims, right?

16            MS. SHROFF:  Yes.

17            THE COURT:  OK.  Now, Ms. Shroff, have you reviewed

18   the presentence report, the recommendation and the addendum and

19   discussed them with the defendant?

20            MS. SHROFF:  I have, your Honor.

21            THE COURT:  All right.  Do you have any objections?

22            MS. SHROFF:  Your Honor, the objections I have I noted

23   in my sentencing submission to the Court.

24            THE COURT:  OK.  It's --

25            MS. SHROFF:  May I?

D3mdrees
                          Sentence

1          THE COURT:  Go ahead.

2          MS. SHROFF:  May I go through them now?

3          THE COURT:  If you wish.  Sure.  Yes.  Go ahead.

4          MS. SHROFF:  So my objections start with paragraph 61.

5    And as I understand the government's sentencing submission and

6    their position now, they agree that the base offense level is

7    properly 6 and not 7.

8          THE COURT:  You were able to get that from the

9    government's memo?  I --

10         MS. SHROFF:  I'm sorry.  I apologize.  Not from their

11   memo.  I spoke -- I apologize.  Not --

12         THE COURT:  The government studiously avoided any

13   discussion of guideline calculations in its memo.

14         MS. SHROFF:  I apologize, your Honor.  I'm confusing

15   my conversation with government counsel with the memorandum.

16         THE COURT:  OK.

17         MS. SHROFF:  I apologize.

18         THE COURT:  So paragraph 61, you say, should be 6?

19         MS. SHROFF:  Yes.

20         THE COURT:  OK.

21         MS. SHROFF:  I say paragraph --

22         THE COURT:  We might as well take that up right now.

23         I'm inclined to agree with the defense that it should

24   be 6.  The information alleges that the crime continued until

25   June of 2002.  So the November 2002 guideline book should be

D3mdrees
                              Sentence

1    used, and the base offense level for 2B1.1 is 6.

2              Does the government agree?

3              MS. NIDIRY:  Yes, we do, your Honor.  Thank you.

4              THE COURT:  OK.  Next.

5              MS. SHROFF:  Your Honor, paragraph 63, we object to

6    the four-level enhancement, as we do to the two-level

7    enhancement reflected in paragraph 64.

8              THE COURT:  OK.  Now, with respect to the four-level

9    enhancement in paragraph 63 for the number of victims, which is

10   more than 50, according to the presentence report, as I read

11   your memo, the basis for the objection is that the defendant

12   didn't admit to more than 50 victims in his plea allocution

13   and, therefore, under Apprendi the enhancement for more than 50

14   victims cannot be included; right?

15             MS. SHROFF:  Yes, and that the government is now

16   precluded from arguing for it before the Court.

17             THE COURT:  Well, of course, the Court has to make a

18   determination of the appropriate guideline calculations, and

19   the government would be entitled to respond to any questions

20   from the Court with respect to guideline calculations, even

21   though the government studiously avoided any discussion of

22   guideline calculations in its sentencing memo, right?  That

23   would not be a violation of the plea agreement.

24             By the way, your argument that it should be 6 in the

25   base offense level, was that consistent with the plea

D3mdrees
                    Sentence

1   agreement?

2           MS. SHROFF:  No, your Honor.

3           THE COURT:  Were you precluded from arguing that?

4           MS. SHROFF:  No, your Honor, but there is a difference

5   and I could explain the difference to the Court.

6           THE COURT:  It's all right.  I've accepted the --

7   because you are right that it should be 6 and, therefore, I

8   have accepted it.

9           MS. SHROFF:  Well, but here's the thing, your Honor.

10  This is not a case -- and, look, I am in an awkward position

11  and I understand the intellectual implication of what I'm about

12  to say at some level.  But the government in its wealth of

13  wisdom, or whatever state of mind they were in at that time,

14  had the facts available to them.  They had chosen -- they

15  agreed that they would not include the plus-50 enhancement.  It

16  is not something they overlooked.  Right?  It wasn't a mistake

17  they made.  They knew what they -- they knew then what they

18  know now.  So there was no difference.

19          The fact that they chose to bargain away that during

20  the plea negotiations I think binds them now, and, therefore, I

21  think that that situation is somewhat different than the 6

22  being the base offense level.

23          THE COURT:  What is the difference?

24          MS. SHROFF:  Nobody realized it was 6 until I sat down

25  to write the sentencing memo.  That's even when I realized it.

D3mdrees
Sentence

1   That was just a genuine oversight on everybody's part, or

2   sloppiness, if you want to call it, on my part included.

3          But the plus 4 wasn't sloppiness.  They, the

4   government, had those facts then, and in fact the fact that

5   they chose not to proceed with that enhancement should bind

6   them now.  That's why we took a plea agreement.

7          THE COURT:  It binds the government; it certainly

8   doesn't bind the Court, right?

9          MS. SHROFF:  Absolutely correct.

10          THE COURT:  The Court has to make its own

11   determination of the appropriate guideline sentencing range in

12   the case, right?

13          MS. SHROFF:  Yes.  That's right.

14          THE COURT:  And I'm sure that when I took the

15   defendant's plea, I explained that.

16          MS. SHROFF:  You did, your Honor, as you do every

17   single time.  So, yes, it's true.

18          THE COURT:  So now I have to make the determination of

19   whether the 18-level enhancement is -- I'm sorry, whether the

20   four-level enhancement under 2B1.1(b)(2)(B) of the 2002

21   guidelines should be added.

22          MS. SHROFF:  That's right.

23          THE COURT:  And then the issue is -- let's deal first

24   with the factual issue of whether there were more than 50

25   victims.

D3mdrees
Sentence

1          It would appear to me that there were plainly more

2     than 50 victims involved.  The defendant had previously agreed

3     to a restitution list of victims of over 200 and over $4

4     million.  Today, for purposes of restitution, the defendant

5     agreed to the revised restitution amount and the revised list

6     of victims, which is over 200.  The presentence report

7     concluded that there were more than 50 victims and included a

8     list of victims which is over 200.

9          It would appear beyond a reasonable doubt that there

10    were more than 50 victims.  The defendant hasn't submitted any

11    objections to the list of victims in the presentence report.

12    And so it would appear beyond a reasonable doubt that there

13    were more than 50 victims.

14          If there were a question of fact that had to be

15    resolved at a Fatico hearing, I would have a Fatico hearing.

16    But there really doesn't appear to be any issue of fact that

17    there were more than 50 victims of the offense.

18          Is that correct?

19          MS. SHROFF:  That is correct.

20          THE COURT:  OK.  So then the only remaining objection

21    is Apprendi.  So the defense argues that the four-level

22    enhancement for 50 or more victims is in violation of Apprendi.

23    The defense argues that because it wasn't alleged in the

24    Indictment and the defendant didn't specifically agree to that

25    fact at sentencing, the Court cannot find that enhancement for

D3mdrees

Sentence

1    purposes of sentencing under Apprendi and under Booker.

2              And the defense knows that that's not right.  I mean,

3    it is simply wrong as a matter of well-established law.  So

4    because it is an argument that's made, I will deal with it.

5              The defendant argues that he did not admit to 50 or

6    more victims in his plea allocution, and he argues that under

7    Apprendi the Court cannot use such an enhancement unless the

8    facts of the enhancement were proved beyond a reasonable doubt

9    to a jury or admitted by the defendant at his plea allocution.

10   The argument has no merit.  Apprendi holds that other than the

11   fact of a prior conviction, any fact that increases the penalty

12   of a crime beyond the prescribed statutory maximum must be

13   submitted to a jury and proved beyond a reasonable doubt.

14             It was for this reason that the Supreme Court in

15   Booker found that the Sentencing Guidelines were

16   unconstitutional if they were mandatory, but the Supreme Court

17   also found that the Sentencing Guidelines survived as

18   non-binding guidelines which sentencing courts should consider.

19   Therefore, individual factual findings under the guidelines

20   cannot increase the defendant's statutory maximum sentence.

21   The individual guideline calculations provide guidance to the

22   Court as to where within the statutory maximum the Court should

23   consider sentencing a defendant.

24             This enhancement, as other calculations under the

25   guidelines, do not and could not increase the statutory maximum

D3mdrees
Sentence

1    penalty to which the defendant was subject.  Therefore, the

2    Court of Appeals has consistently held, following <u>Booker</u>, that

3    enhancements under the guidelines need only be found by the

4    Court using the preponderance of the evidence standard.

5           The cases are legion in the Court of Appeals,

6    including <u>United States v. Vaughn</u>, 430 F.3d 518 (2d Cir. 2005),

7    a decision by now Justice Sotomayor; <u>United States v. Shelton</u>,

8    2006 WL 3406840 (2d Cir. November 22, 2006) summary order;

9    <u>United States v. Martinez</u>, 525 F.3d 211, (2d Cir. 2008), per

10   curiam; <u>United States v. Bland</u>, 271 Fed. Appendix 37 (2d Cir.

11   March 25, 2008), summary order, including others.

12          Under the defense proposition all of the sentencing

13   enhancements -- in fact, all of the details of the Sentencing

14   Guidelines -- would have to be set out in an indictment when

15   the defendant went to trial or admitted by a defendant at a

16   plea allocution, which is plainly not the law.  The details of

17   the Sentencing Guidelines are matters to be proven to the Court

18   by a preponderance of the evidence in connection with a

19   sentence.  And in this case there is no dispute of fact that

20   there were more than 50 victims, and that fact is proven in

21   this case beyond a reasonable doubt.  And so there really is

22   no -- no argument that the four-level enhancement for 50 or

23   more victims should not be included.

24          Based upon what the defendant has said, I assume that

25   it is the defense position I shouldn't even ask the government

D3mdrees
                              Sentence

 1    what their position is on the more than 50 victims.  So I'll --

 2    I mean, the government does have an interest in making sure

 3    that the Court does not err in the calculation of the

 4    guidelines.  The Court is required to calculate the guidelines

 5    as a procedural matter in connection with sentence, and I would

 6    not want to err in calculating the guidelines.

 7             So does the defense agree that I can at least ask the

 8    government if I've erred?

 9             First of all, is there anything that I've said,

10    Ms. Shroff, that is incorrect in any way?

11             MS. SHROFF:  No.  And, your Honor, it would not be the

12    defendant's position that the Court could not inquire.  The

13    Court can do whatever the Court has said.  I mean, I do not --

14    I hardly ever --

15             THE COURT:  OK.  I can ask the government.  But I just

16    want to -- I mean, I've explained at great length what my

17    reasoning was with respect to the four-level enhancement, and

18    if there is an objection which I have missed or misconstrued or

19    something, you can bring it to my attention now.

20             MS. SHROFF:  I don't think you missed anything.  I

21    made the arguments that I could on behalf of my client.

22             THE COURT:  OK.  Does the government want to be heard

23    on this?

24             MS. NIDIRY:  No, your Honor.

25             THE COURT:  OK.

D3mdrees
                              Sentence

1          MS. NIDIRY:  Thank you.

2          THE COURT:  The next -- we've gotten up to -- we went

3    through paragraph 63, and the next paragraph, then, is 64,

4    which is the two-level enhancement.  And this actually in the

5    memo is not raised as an <u>Apprendi</u> argument, it was raised as a

6    factual argument.  And I tend to agree with the defense on this

7    issue.  The enhancement would apply if a substantial part of

8    the fraudulent scheme was committed from outside the United

9    States or if the offense otherwise involved sophisticated

10   means.  The defendant disputes that the evidence supports this

11   enhancement, and the government has not attempted to justify

12   it.  On the record the Court could not conclude that the

13   enhancement has been proven.  The defendant argues that his

14   activities were committed from the United States and not from

15   abroad, even though some foreign banks were used, and the

16   defense contends, without opposition by the government, that

17   there is no evidence that a substantial part of the fraudulent

18   scheme was committed from outside the United States.

19          As to sophisticated means, the defense argues that

20   there was nothing sophisticated about the scheme.  The

21   defendant made false representation about rates of return, but

22   made no investments that would have justified such false

23   promises and then proceeded to use the money that he obtained.

24          Sophisticated means should make detection of the

25   offense more difficult, and this scheme was not difficult to

D3mdrees
                              Sentence

1    detect when investigated.  Therefore, the government has not

2    sought to prove that the enhancement is justified.  And based

3    upon the evidence submitted to the Court, the Court could not

4    conclude that the enhancement has been proven.

5           So do the parties want to be heard on this

6    enhancement?

7           MS. SHROFF:  Mr. Reed does not, your Honor.

8           MS. NIDIRY:  No, your Honor.

9           THE COURT:  All right.  Any other objections?

10          MS. SHROFF:  No, your Honor.

11          THE COURT:  All right.  Ms. Shroff, I'll listen to you

12   for anything that you wish to tell me in connection with

13   sentence, any statement that you would like to make, anything

14   at all you would like to tell me.

15          And, again, in order to help the defendant hear, if

16   you wish to speak from where you are, that's fine.

17          MS. SHROFF:  Your Honor, as I wrote in my

18   sentencing --

19          THE COURT:  Even if you want to sit, it's OK.

20          MS. SHROFF:  I think it's easier for Mr. Reed if I

21   stand and speak it.

22          THE COURT:  OK.

23          MS. SHROFF:  He's as tall sitting as I am standing so

24   I think it's OK.

25          When I was meeting with Mr. Reed earlier this

D3mdrees
Sentence

afternoon, I was reminded by something that Judge Lynch once

said to one of my clients.  In sentencing my client, he said,

you know, a sentence is an important day.  It is the only day

of reckoning you have while your feet are still on the ground

and you are aware of what's going on.  And I think in most

clients' cases that is obviously the case, but for Mr. Reed

here it is particularly apt because Mr. Reed fully realizes the

immense consequences of his actions.

      And it may sound trite or it may sound like something

that a defense lawyer has said before, and many a defense

lawyer may have said it before, but I believe that Mr. Reed is

cognizant of and truly remorseful of his actions not just in

terms of the consequences on him and his family but I think in

the time that this case has been pending Mr. Reed has seen a

true change in the person that he is.  He has taken certain

steps and managed to change quite a bit about not only his

behavior but also about himself.

      I note for the Court, your Honor, that Mr. Reed has

maintained employment, has lived a very simple and

straightforward life, demonstrating to the Court that at least

he is capable of that.  He does not and has not reverted to any

inappropriate conduct or to other fraudulent schemes to support

himself or his family.

      I'm not asking the Court to commend him for staying

crime-free while on Pretrial Services; I'm simply saying that

D3mdrees
Sentence

1   organically he is a person that is capable of change and

2   recognizing the need for change.

3          Most telling for me is the fact that Mr. Reed does

4   have family support.  And by "family support" I don't mean a

5   family that comes to court and says we are behind you, but

6   support in the sense of holding him accountable for what he's

7   done in the past.  His sister is here, as are his parents; they

8   are sitting in the courtroom.  And I think they are just as

9   much aware of who sits on the other side of the courtroom,

10  including Mr. Reed's victims.  I think that the Reed family is

11  very cognizant of the fact that one of their own has harmed

12  another person, and I think along with Mr. Reed, they are truly

13  ashamed of those actions.

14         In my sentencing letter, your Honor, I address the

15  issue of the loss guidelines themselves.  I note that the Court

16  is extremely familiar with every argument that is made about

17  the loss guidelines so I won't repeat it here.

18         On behalf of Mr. Reed, I would like to just conclude

19  by telling you that there is a certain amount not just of

20  remorse but also true shame when he looks back on what he did.

21  I ask the Court for a sentence of 36 months in this particular

22  case, because I thought about what number would accomplish not

23  just the goals of sentencing but also reflect the inflation of

24  the loss guidelines themselves.  It wasn't a number that I just

25  sort of picked out of a hat.

D3mdrees
Sentence

1        Unless the Court has any further questions, I don't

2   have anything to add.

3        THE COURT:  No.  Thank you, Ms. Shroff.

4        All right.  Mr. Reed, have you reviewed the

5   presentence report, the recommendation and the addendum and

6   discussed them with your lawyer?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  Other than your lawyer has already said,

9   do you have any additional objections to the presentence

10  report?

11       THE DEFENDANT:  No, sir.

12       THE COURT:  I'll listen to you for anything you would

13  like to tell me in connection with your counsel's objections or

14  anything you would like to tell me in connection with sentence.

15       THE DEFENDANT:  In connection to the presentence

16  report?

17       THE COURT:  Well, let's take the two things in order.

18       Is there anything else you would like to tell me in

19  connection with the objections that your counsel has made?

20       THE DEFENDANT:  No, sir.

21       THE COURT:  OK.  I'll now listen to you for anything

22  you would like to tell me in connection with sentence, any

23  statement you would like to make on your own behalf, anything

24  you would like to say in mitigation, anything at all you would

25  like to tell me.

D3mdrees
Sentence

1    THE DEFENDANT:  Well, you have my letter that I wrote

2  to you previously, so I won't waste the Court's time with that.

3  But I understand that we only have one victim in the courtroom

4  today, but I do know how many lives I've touched and how many

5  people have been hurt by my actions.  I'm truly sorry for

6  everything that I did and not only to the victims in this case

7  but the shame and the harm that I've caused my own family

8  through my actions.

9    If there was a way for me to make amends to every

10  single victim, believe me, I would; and I know that due to age

11  and other circumstances and the amount, a lot of that is not

12  possible.  But I am committed to doing everything that I can to

13  live the right kind of life and to live within the law as well

14  as to make amends to the victims and everyone that I've hurt in

15  this -- in all of my actions.

16    THE COURT:  All right.  Thank you, Mr. Reed.

17    Ms. Nidiry, has the government reviewed the

18  presentence report, the recommendation, and the addendum?

19    MS. NIDIRY:  Yes, your Honor.

20    THE COURT:  Does the government have any objections?

21    MS. NIDIRY:  No, your Honor.

22    THE COURT:  I'll listen to you for anything the

23  government wants to tell me in connection with sentence.  And I

24  understand that you live by your plea agreement, right?

25    MS. NIDIRY:  Yes, your Honor.  I think that's -- I

D3mdrees
Sentence

won't -- we set forth in our submission why we think a sentence

within that range set forth in the plea agreement, or a

substantial range, is appropriate for this defendant because of

the impact his conduct had on the victims.

        And I should have pointed out at the beginning, as the

defense counsel alluded to, one of the victims, Mr. Desmond

Kramer, is in the courtroom.

        THE COURT:  After you are done, unless you want me to

listen to any victims first, I was going to call on any victims

in the courtroom.

        MS. NIDIRY:  OK.  So basically -- I don't have

anything further to say beyond that, unless the Court has

anything specific that you want to ask me about.  Basically

because of the impact that the defendant's conduct had on these

victims -- and, you know, it was a deceitful -- it was fraud

and so he cheated people out of a substantial amount of money

and that should be punished.  And we think that, you know,

things like the loss amount are -- they reflect the seriousness

of the conduct.

        THE COURT:  All right.  If there are any victims in

the courtroom who wish to be heard in connection with sentence,

I'll listen to any victims now who wish to address the Court.

        MR. KRAMER:  Yes, your Honor.

        THE COURT:  All right.  Could you come forward.  Tell

us who you are.

D3mdrees
Sentence

1        MR. KRAMER:  Shall I speak from here?

2        THE COURT:  It would be better if you came forward and

3   spoke into the microphone, if you would.

4        MR. KRAMER:  I can't hear too well.  I'm sorry.

5        THE COURT:  If you came forward and spoke into the

6   microphone, that way everyone could hear you.

7        (Pause)

8        MR. KRAMER:  Thank you.

9        Your Honor, my name is Jack Desmond Kramer.  I have

10  been a citizen of the United States since 1959.  And I was

11  unfortunate enough to be guided by Mr. Reed's presentations, by

12  the people who supposedly had worked for him, his agents who

13  represented him from which he earned a commission, and on the

14  basis of trust I invested all my savings with the man.

15       This has created a lot of hardship with me, and I'm

16  angry.  I'm appalled that this man consciously, with full

17  knowledge of what he was doing, with the people that he was

18  hiring to do what he was doing, should defraud people in the

19  open manner in which he did, after which he simply apparently

20  closed up and wasn't anywhere to be found.

21       I accuse him of, again, creating hardship to myself

22  and two people else that I know; I can mention their names if

23  the Court so please.  And that's the really extent that I have

24  to say.

25       I -- frankly, I'm disgusted at the man.  I'm appalled

D3mdrees
                                Sentence

1    at what he's done.  I'm angry over what he's done.  And I'm

2    furious at the impact that he's had on my life, with my having

3    lost all my savings.

4                    THE COURT:  All right.

5                    MR. KRAMER:  That's really all I have to say, your

6    Honor.

7                    THE COURT:  Thank you, Mr. Kramer.

8                    I'll place the presentence report, the recommendation

9    and the addendum in the record under seal.  I'd ask the parties

10   to make their submissions to the Court, place them in the

11   record not under seal after they have made sure that they've

12   redacted any personal identifying information in the

13   submissions or any information that otherwise is required to be

14   redacted under the criminal rules.

15                   Is that satisfactory with both sides?  Yes?

16                   MS. NIDIRY:  Yes, your Honor.

17                   MS. SHROFF:  Yes, your Honor.

18                   THE COURT:  OK.  I adopt the findings of fact in the

19   presentence report except as follows:  The defendant has raised

20   several objections to the guideline calculations in the

21   presentence report.  The government has not responded to any of

22   the arguments, but the Court has the responsibility to

23   calculate the guidelines correctly, in any event.

24                   Earlier in this proceeding the Court has already

25   indicated how it will resolve the various disputes under the

D3mdrees
Sentence

1    guidelines, but it is useful to recapitulate the guideline

2    calculations and the objections to them and the Court's

3    rulings.

4            First, the defendant argues that the 2002 guidelines

5    should be used because the offense charged in the information

6    to which the defendant pleaded ended in June 2002.  That is

7    correct.  The government agrees also.  Therefore, the Court

8    will use the 2002 guideline manual.  Therefore, the base

9    offense level for a violation of 2B1.1 in this case is 6,

10   rather than 7.  There is no dispute that 18 levels should be

11   added under 2B1.1(b)(1)(J) because the amount of the loss is in

12   excess of $2,500,000 but less than $7 million.

13           The defendant disputes the addition of four levels

14   under 2B1.1(b)(2)(B), which applies if the offense involved 50

15   or more victims.

16           I've already explained why the four levels should in

17   fact be added.

18           There is no plausible argument that the offense did

19   not involve 50 or more victims.  Indeed, the evidence

20   establishes beyond a reasonable doubt that the defendant's

21   offense involved 50 or more victims.  The legal argument that

22   under Apprendi and Booker the enhancement for 50 or more

23   victims must be included in the indictment and proved to a jury

24   beyond a reasonable doubt or admitted by the defendant has no

25   merit for all of the reasons that the Court has already

D3mdrees
Sentence

1  explained.  Therefore, the four-level enhancement under

2  2B1.1(b)(2)(B) should be applied.

3       The presentence report included a two-level

4  enhancement under what was 2B1.1(b)(7) in the 2002 guidelines.

5  The evidence does not support this enhancement, and, therefore,

6  that enhancement will not be included.

7       Therefore, the offense level is 6, plus 18 for the

8  loss amount, plus 4 for 50 or more victims, or 28, minus three

9  levels for acceptance of responsibility, for a total offense

10  level of 25.  The Criminal History Category is I.  And the

11  guidelines' sentencing range is, therefore, 57 to 71 months.

12       I appreciate that the guidelines are only advisory and

13  that the Court must consider the various sentencing factors in

14  18 U.S.C., Section 3553(a), and impose a sentence that is

15  sufficient but no greater than necessary to comply with the

16  purposes set forth in Section 3553(a)(2).

17       In this case the offense is very serious and there is

18  a need for deterrence.  The amount of the fraud is very large

19  and it continued over a period of time.  The victim impact

20  letters, as well as the victim testimony at the hearing,

21  indicate that people have been harmed in real ways, some on

22  retirement incomes, and that the offense has had significant

23  impact on the victims.  That enhances the magnitude of the

24  crime.  The amount of the loss was very large.  The number of

25  victims was very large.  The impact on the victims was real.

D3mdrees
Sentence

1           A substantial sentence is necessary to reflect the

2   seriousness of the crime and the need for deterrence.

3           The defendant relies in part on the effect on his

4   family from any sentence of imprisonment; but that is in fact a

5   consequence of the crime, and the defendant's family

6   circumstances are not so unusual as to warrant a reduction in

7   the sentence on that basis alone.

8           The defendant does have a reasonable argument that he

9   has demonstrated his rehabilitation because the crime is

10  alleged to have been completed in June 2002 and since that time

11  the defendant has been gainfully employed and there is no

12  evidence of a return to fraudulent activity.  Moreover, the

13  defendant has been on pretrial release for about four years

14  and, therefore, has endured the restrictions on his liberty for

15  that period of time.  Moreover, while not binding on the Court,

16  the government, fully aware of all of the details of the

17  defendant's crime, was prepared to agree to a plea agreement

18  with a guidelines' sentencing range of 41 to 51 months'

19  imprisonment.

20          Based on those considerations, the Court will vary

21  downwardly, modestly, to a sentence that is sufficient but no

22  greater than necessary to accomplish the goals of Section

23  3553(a)(2).

24          In this case the Court intends to impose a sentence of

25  51 months on Count One, to be followed by a three-year term of

26

D3mdrees
Sentence

1   supervised release, with the standard conditions of supervised

2   release in this district and those recommended by the Probation

3   Department.

4        The Court will recommend imprisonment in South

5   Carolina so that the defendant can be close to his family.

6        The Court will allow voluntary surrender.

7        The Court will not impose a fine because the defendant

8   lacks the ability to pay a fine, after taking into account the

9   presentence report, the requirement of forfeiture and the

10  requirement of restitution.

11       The Court will impose a forfeiture order in the

12  specific amount of $12.8 million and the other details of the

13  forfeiture order that has been proffered to the Court and that

14  the Court has signed in connection with sentence.

15       The Court will impose restitution in the amount

16  of $4,326,373.78, payable to the victims listed in Exhibit B to

17  the government's memo.  The restitution is payable in the

18  amounts listed.  Restitution is payable at the rate of

19  10 percent of the defendant's gross monthly income beginning 30

20  days after the defendant's release from imprisonment.

21       The Court will impose a $100 special assessment.

22       The sentence is consistent with the factors in Section

23  3553(a) and is sufficient but no greater than necessary to

24  comply with the purposes of Section 3553(a)(2).  It recognizes

25  the seriousness of the offense and the need for deterrence.  It

D3mdrees
Sentence

takes into account mitigating circumstances.  Because the

modest downward variance is justified by the facts of this

case, it does not result in unwarranted sentencing disparities.

I've already explained the reasons for the sentence.

Before I actually impose the sentence, Ms. Shroff, I will

recognize you for anything you wish to tell me.

MS. SHROFF:  I do not have anything to add, your

Honor.

THE COURT:  All right.  Mr. Reed, before I actually

impose the sentence, I'll recognize you for anything you wish

to tell me, anything you would like to say, anything at all you

would like to tell me.

THE DEFENDANT:  Nothing, your Honor.

THE COURT:  Ms. Nidiry, I will recognize you for

anything the government wishes to tell me.

MS. NIDIRY:  No, your Honor.  Thank you.

THE COURT:  All right.  Pursuant to the Sentencing

Reform Act of 1984, it is the judgment of this Court that the

defendant, David Copeland Reed, is hereby committed to the

custody of the Bureau of Prisons to be imprisoned for a term of

51 months on Count One.

The defendant shall voluntarily surrender to an

institution designated by the Bureau of Prisons by May 31,

2013.

I recommend incarceration in South Carolina so that

D3mdrees
Sentence

the defendant can be close to his family.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years.

Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the Probation Office in the district to which the defendant is released.

While on supervised release, the defendant shall comply with the standard conditions of supervised release in this district.  The defendant shall not commit another federal, state or local crime.  The defendant shall not possess a firearm, or destructive device, as defined in 18 U.S.C., Section 921.

The defendant shall refrain from any unlawful use or possession of a controlled substance.

The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

The defendant shall provide the probation officer with access to any requested financial information.  The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment

D3mdrees
                                     Sentence

1    schedule.

2              The defendant shall pay restitution in the amount

3    of $4,326,373.78, payable to the victims listed in Exhibit B to

4    the government's memo in accordance with the specific loss

5    amounts.  Restitution is payable at the rate of 10 percent of

6    the defendant's gross monthly income beginning 30 days after

7    release from imprisonment.

8              The defendant shall notify the United States Attorney

9    for this district within 30 days of any change of mailing or

10   residence address that occurs while any portion of the

11   restitution remains unpaid.

12             The defendant shall forfeit to the United States the

13   sum of $12.8 million, and the Court has signed an order of

14   forfeiture.

15             It is further ordered that the defendant shall pay to

16   the United States a special assessment of $100, which shall be

17   due immediately.

18             I've already explained the reasons for the sentence.

19   Does either counsel know of any legal reason why the sentence

20   should not be imposed as I have so stated it?

21             MS. NIDIRY:  No, your Honor.

22             MS. SHROFF:  No, your Honor.

23             THE COURT:  All right.  I order the sentence to be

24   imposed as I have so stated it for all the reasons that I have

25   explained.

D3mdrees
Sentence

1              There is a waiver of the right to appeal, correct?

2              MS. NIDIRY:  Yes.  That is correct, your Honor.

3              THE COURT:  Does either counsel know of any legal

4    reason why the waiver is not effective?

5              MS. NIDIRY:  No, your Honor.

6              MS. SHROFF:  No, your Honor.

7              THE COURT:  OK.  Mr. Reed, the reason that I asked

8    these questions is generally a defendant has the right to

9    appeal the sentence.  The Notice of Appeal must be filed within

10   14 days after the entry of the judgment of conviction.  The

11   judgment of conviction is entered promptly after the judge

12   announces the sentence.

13             If the defendant cannot pay the costs of appeal, the

14   defendant has the right to apply for leave to appeal in forma

15   pauperis.  If the defendant requests, the Clerk will prepare

16   and file a Notice of Appeal on the defendant's behalf

17   immediately.

18             In this case the parties advise that you have given

19   up, or waived, your right to appeal, and I'm confident that

20   when I took your plea I went over the waiver of the right to

21   appeal with you.  So it appears that you have waived your right

22   to appeal.  But I go over this with you now because I want to

23   make sure that you discuss this issue with your lawyer so that

24   you are fully informed of all of your rights.

25             Do you understand what I've said?

D3mdrees
Sentence

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  Open counts?

3          MS. NIDIRY:  Yes, your Honor.

4          The government moves to dismiss the underlying

5    indictment.

6          THE COURT:  All open counts, right?

7          MS. NIDIRY:  Yes, all the counts, mm-hmm.

8          THE COURT:  The government moves to dismiss all open

9    counts, and the defendant agrees, right?

10         MS. SHROFF:  That is right, your Honor.

11         THE COURT:  All open counts dismissed on the motion of

12   the government.

13         Anything further?

14         MS. NIDIRY:  Nothing further from the government.

15         MS. SHROFF:  Your Honor, may I raise one issue with

16   regard to Mr. Reed's surrender date?

17         THE COURT:  Yes, sure.

18         MS. SHROFF:  Your Honor, the Court ordered Mr. Reed to

19   surrender by May 31st.  I ask for a later date for one

20   particular reason in this case.  Mr. Reed has two children.

21   Having him surrender in the summer will mean that they will

22   have to be in day-care with the costs my client cannot afford.

23         Would the Court consider allowing him to surrender in

24   the first week of September, when they are back in school?

25         THE COURT:  No.  That is really a long, long time for

D3mdrees
                          Sentence

1    surrender, and I am really not inclined to do that.

2              If there is no -- obviously, if the Bureau of Prisons

3    doesn't designate a facility in time for May 31st, I would

4    extend the date but otherwise not.  OK?

5              MS. SHROFF:  Your Honor --

6              THE COURT:  In fact, I had thought that May 31st would

7    be -- putting aside summer, would be the end of any school

8    year.

9              MS. SHROFF:  The problem is they would be -- his

10   children are out all summer.

11             THE COURT:  I understand the argument with respect to

12   summer camp, or day-care, but I thought May 31 would be a

13   reasonable time.

14             OK.  Anything else?

15             MS. SHROFF:  No, your Honor.

16             THE COURT:  All right.  Good afternoon, all.

17             MS. SHROFF:  Good afternoon.

18             MS. NIDIRY:  Thank you.

19

20                              -   -   -

21

22

23

24

25